IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

KARL E. DOVER, on his own behalf and on )
behalf of all others similarly situated, )
)
Plaintiff, )
) CIVIL ACTION NO. _____
v. )
) JURY TRIAL DEMANDED
OLD REPUBLIC HOME PROTECTION )
COMPANY, INC., )
)
Defendant. )

## NATIONWIDE CLASS ACTION COMPLAINT

Plaintiff Karl E. Dover, on behalf of himself and all others similarly situated, hereby brings this civil action against defendant Old Republic Home Protection Co., Inc. ("defendant" or "Old Republic").

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Karl E. Dover ("plaintiff" or "Dover") is an adult resident citizen of Alabama and of this district and division.

2. Defendant Old Republic is a business corporation organized under and existing pursuant to the laws of the state of California, with its principal place of business in California.

3. This is a class action with class members located throughout the United States. Less than one-third of the class members reside in Alabama. The defendant is not a citizen of Alabama. The amount in controversy exceeds $5,000,000.00 (five million dollars) exclusive of interest and costs. Accordingly, diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(d) (as modified by the Class Action Fairness Act of 2005).

4. This case alleges violations of Section 8 of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607 ("RESPA"). This case thus arises under the laws of the United States. Accordingly, federal question jurisdiction exists pursuant to 28 U.S.C. § 1331.

5. Old Republic is qualified to do business and conducts business in this district and division. This court accordingly has personal jurisdiction over the defendant, and thus venue is appropriate pursuant to 28 U.S.C. § 1391.

## ALLEGATIONS COMMON TO THE CLASS

6. This case pertains to defendant's nationwide practice of charging home warranty premiums in connection with the settlement or closing of home mortgage loans in a manner that violates RESPA, specifically Section 8(a), which prohibits, among other things, the giving or accepting of fees in exchange for the referral of any "service involving a federally related mortgage loan" to "any person."

7. Old Republic is in the business of selling home warranties under which homeowners pay a premium (or a premium is paid on the homeowner's behalf) in exchange for certain services Old Republic provides in the event that certain components of a home require repair or replacement.

7. Old Republic markets its warranties through, among other avenues, real estate brokers involved in the sale of homes that are purchased using home mortgage loans. Old Republic has business relationships with real estate brokers throughout the United States. These brokers are encouraged to sell Old Republic warranties to home buyers and sellers in connection with home purchases. The premium for a 1-year home warranty is collected from the home buyer or seller in connection with the settlement and closing of the home purchase and related mortgage documents. Old Republic customarily pays a fee denominated a "marketing fee" or "administrative fee" to real estate brokers who sell Old Republic home warranties. The real

estate brokers customarily pocket, as their fee, a portion of the home warranty premium that is paid by the home buyer or seller in connection with the settlement or closing of the home mortgage loan.

8. The foregoing practice of paying fees to real estate brokers in connection with their placing home warranties with home buyers is a violation of Section 8(a) of RESPA, 12 U.S.C. § 2607(b). It constitutes the giving of a fee for the referral of services related to a federally related mortgage loan.

### ALLEGATIONS PERTAINING TO PLAINTIFF DOVER

9. Mr. Dover purchased a home located at 5031 8th Terrace South, Birmingham, Alabama 35212. The seller was Christine Prichard. The sale was financed using a federally related mortgage loan from Polaris Home Funding Corporation, and closed on March 30, 2009.

10. In connection with the home purchase, Mr. Dover was represented by a real estate agent named Kate Causey, an employee of Lawrence-Arendall-Humphries Real Estate, Inc. ("LAH"). Among the documents executed in connection with the agency arrangement with Ms. Causey and LAH, Mr. Dover was presented with a "Buyer's Acknowledgement Statement," a true and correct copy of which is attached hereto as Exhibit A. Paragraph 2 of the Buyer's Acknowledgement Statement states, in part, "Buyers acknowledge that the Sales Associate **strongly recommends** the purchase of a Home Warranty from a qualified home warranty provider. . . . Buyers acknowledge that LAH may receive a limited payment in the sale of some home warranty programs."

11. At the March 30, 2009 closing of the 8th Terrace South house sale, one of the items listed among Mr. Dover's closing costs was a charge for $455 for a one-year home warranty purchased from Old Republic. Upon information and belief, based upon the Buyer's Acknowledgement Statement and other information, a portion of that $455 charge that Mr.

3

Dover paid at closing went to LAH in exchange for referring Mr. Dover's home warranty business to Old Republic. Old Republic paid this charge to LAH for the referral.

## CLASS ACTION ALLEGATIONS

12. Plaintiff brings this action on his own behalf and on behalf of others similarly situated as a nationwide class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The class which plaintiff seeks to represent is composed of and defined as:

> All persons in the United States of America who have purchased from the defendant a home warranty in connection with the sale or purchase of a home financed by a federally related mortgage during the applicable statute of limitations period, where any portion of the premium was paid to any real estate agent involved in the transaction, whether such payment was denominated a referral fee, kickback, administrative fee, marketing fee, or any other titles or names describing such payments. Excluded from the class are the defendant, all officers, directors, employees, or agents of the defendant, and any agency or employee of the United States government acting in their official capacity.

13. This action has been brought and may properly be maintained as a class action pursuant to the provisions of the Rule 23(a)(1)-(4) and Rule 23(b) of the Federal Rules of Civil Procedure, and satisfies the numerosity, commonality, typicality, adequacy and superiority requirements thereof because:

(a) The plaintiff class is so numerous that the individual joinder of all members is impracticable under the standard of Fed. R. Civ. P. 23(a)(1).

(b) Common questions of law and fact exist as to all members of the class, as required by Fed. R. Civ. P. 23(a)(2), and predominate over any questions which affect only individual members of the class within the meaning of Fed. R. Civ. P. 23(b)(2). These common questions of law and fact include, without limitation:

(1) Whether defendant has engaged in a violation of law as alleged herein;

(2) Whether defendant by nature of its wrongful conduct is liable for damages and losses resulting from the conduct alleged herein; and

4

(3) Whether the defendant had a policy and uniform practice of violating RESPA in connection with the sale of home warranties, as alleged herein.

(c) Plaintiffs claims are typical of the claims of the members of the class under Fed. R. Civ. P. 23(a)(3). The plaintiff and all members of the class sustained damages arising out of defendant' common course of conduct in violation of law as complained herein. The losses of each member of the class were caused directly by defendant's wrongful conduct in violation of law as alleged herein.

(d) The individual and representative plaintiff will fairly and adequately protect the interests of the class as required by Fed. R. Civ. P. 23(a)(4). Plaintiff has no interests which are adverse to the interests of the class members. Plaintiff is an adequate representative of the class and any subclass as designated by the court. Plaintiffs have retained counsel who have substantial experience and success in the prosecution of class action and consumer litigation.

(e) The scheme affected all class members similarly. Each plaintiff and class member paid a fee in connection with a federally related mortgage closing that violates Section 8 of RESPA.

(f) A class action is superior to other available methods for the fair and efficient adjudication of this controversy under Fed. R. Civ. P. 23(b) since individual joinder of all members of the class is impracticable. Furthermore, as the damages suffered by each individual member of the class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them. The cost to the court system of adjudication of such individualized litigation would be substantial. Individualized litigation would also present the potential for inconsistent or contradictory judgments and would magnify the delay and expense to all parties and the court system in multiple trials of the factual issues of the case. By contrast, the conduct of this action

as a class action presents far fewer management difficulties, conserves the resources of the parties and the court system, and protects the rights of each class member

## PRAYER FOR RELIEF

WHEREFORE, the premises considered, plaintiff Karl E. Dover, on his own behalf and on behalf of those similarly situated, prays that the Court will:

A. Take jurisdiction of this action and certify it as a nationwide class action, appointing D. Frank Davis and John E. Norris as class counsel;

B. Upon a jury verdict, award damages to plaintiff and the class in an amount equal to three times the amount of any charge paid for the settlement service of providing a home warranty;

C. Award court costs together with reasonable attorney's fees and expenses;

D. Award prejudgment and post-judgment interest; and

E. Award such further, different, or additional relief as the Court deems appropriate.

D. Frank Davis
One of the Attorneys for Plaintiff

OF COUNSEL:

D. FRANK DAVIS
WESLEY W. BARNETT
DAVIS & NORRIS LLP
The Bradshaw House
2154 Highland Avenue South
Birmingham, Alabama 35205
Voice: 205.930.9900
Fax: 205.930.9989
fdavis@davisnorris.com
jnorris@davisnorris.com
wbarnett@davisnorris.com

## JURY DEMAND AND REQUEST FOR SERVICE BY CERTIFIED MAIL

Plaintiff demands trial by jury.

Please serve the defendant Old Republic Home Protection Company, Inc. by certified mail pursuant to Alabama Rules of Civil Procedure 4(i)(2) and Federal Rules of Civil Procedure 4(e)(1) at the following address:

Old Republic Home Protection Company, Inc.
c/o CSC Lawyers Incorporating Svc., Inc.
150 S. Perry Street
Montgomery, Alabama 36104

/s/ [signature]
OF COUNSEL

7



# REAL ESTATE BROKERAGE SERVICES DISCLOSURE
### THIS IS FOR INFORMATION. THIS IS NOT A CONTRACT.

* Alabama law requires you, the consumer, to be informed about the types of services, which real estate licensees may perform. The purpose of this disclosure is to give you a summary of these services.

A **SINGLE AGENT** is a licensee who represents only one party in a sale. That is, a single agent represents his or her client. The client may be either the seller or the buyer. A single agent must be completely loyal and faithful to the client.

A **SUBAGENT** is another agent/licensee who also represents only one party in a sale. A subagent helps the agent represent the same client. The client may be either the seller or the buyer. A subagent must also be completely loyal and faithful to the client.

A **LIMITED CONSENSUAL DUAL AGENT** is a licensee for both the buyer and the seller. This may only be done with the written, informed consent of all parties. This type of agent must also be loyal and faithful to the client, except where the duties owed to the clients conflict with one another.

A **TRANSACTION BROKER** assists one or more parties, who are customers, in a sale. A transaction broker is not an agent and does not perform the same services as an agent.

* Alabama law imposes the following obligations on all real estate licensees to all parties, no matter their relationship:
1. To provide services honestly and in good faith;
2. To exercise reasonable care and skill;
3. To keep confidential any information gained in confidence, unless disclosure is required by law or duty to a client, the information becomes public knowledge or disclosure is authorized in writing;
4. Present all offers promptly to the seller;
5. Answer your questions completely and accurately.

Further, even if you are working with a licensee who is not your agent, there are many things the licensee may do to assist you. Some examples are:
1. Provide information about properties;
2. Show properties;
3. Assist in making a written offer;
4. Provide information on financing.

You should choose which type of service you want from a licensee, and sign a brokerage service agreement. If you do not sign an agreement, by law the licensee working with you is a transaction broker.

The licensee's broker is required by law to have on file an office policy describing the company's brokerage services. You should feel free to ask any questions you have.

The Alabama Real Estate Commission requires the real estate licensee to sign, date, and provide you a copy of this form. Your signature is not required by law or rule, but would be appreciated.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Name of licensee   Kate Causey Price
Signature   Kathryn Price
Date   2/25/09

Consumer name   KARL Dover
Signature
Date   2/25/09
(Acknowledgment for Receipt Purposes Only)

11/16/2005



# Exclusive Buyer Agency Agreement

The undersigned **Karl E. Dover**, hereinafter referred to as "Client", hereby engages Lawrence-Arendall-Humphries Real Estate, Inc. and its sales associate **Kate Causey**, hereinafter referred to as "broker", as the Client's sole and exclusive agent, to locate acceptable real property, and to negotiate terms and conditions acceptable to the Client, for the purchase, exchange, lease, trade, or option to buy, for a period beginning **February 25**, 20**09**, and ending at midnight on **April 1**, 20**09**.

1. **EFFECT OF EXCLUSIVE BUYER AGENCY AGREEMENT:** By appointing Broker as Client's exclusive agent, Client agrees to conduct all negotiations for property through Broker and refer to Broker all inquiries received from other agents or prospective sellers during the term of this agreement. Client understands that commission payable to Broker shall be deemed earned upon Client's purchase of real estate whether or not Broker was directly involved in the transaction leading to such purchase. This would include properties seen through open houses, for sale by owners, or other situations when Broker was not directly involved.

2. **SCOPE OF BROKER'S SERVICES:** Broker will exercise a good faith effort to locate real property as described by the Client. Broker will work at all times in the Client's best interest (except as described in Paragraph 6 below), and will inform all prospective sellers and their agents with whom Broker has contact that he/she is representing the Client.

   Client agrees to furnish Broker with necessary personal and financial information to assist Broker's efforts, but parties understand that confidential information about the Client (including motivation/time frame to purchase, etc.) will not be disclosed to any seller or seller's agent without the express written permission of the Client.

3. **CONDITION OF PROPERTY:** Client acknowledges that, in locating properties for the Client, Broker may rely on statements or representations of others, that any given property may not satisfy all the requirements expressed by the Client, and that the Broker makes no representations whatsoever regarding the condition of any such property or its suitability to the Client's intended purposes. Client, and not the Broker, has the responsibility to determine or verify either personally or through or with a licensed contractor or other representative of the Client's choosing, any and all conditions of the property material to the Client's decision to buy the property. The Client agrees to obtain and pay for a property condition inspection from a qualified residential inspector(s) chosen by the Client and to make any offer to purchase contingent upon such inspection.

4. **COMPENSATION:**

    A. **Brokerage Fee:** CLIENT HEREBY AGREES THAT BROKER SHALL FIRST SEEK COMPENSATION FROM THE SELLER.

    1.) Broker is willing to accept as its compensation upon closing the amount offered by listing broker to Broker acting as Buyer's Agent on any properties LISTED in the Birmingham Area Multiple Listing Service (MLS). The payment of any fee by the Seller to the Broker will in no way obligate the Broker as either agent or sub-agent of the Seller.

    2.) In the event Client is interested in purchasing a property which is NOT LISTED in the MLS and the owner of such property refuses to compensate Broker, Client agrees to pay Broker a fee three and one-half percent (3 ½ %) of the purchase price of the property upon closing.

    B. **Retainer Fee:** A fee of $ **N/a** as compensation for initial counseling, consultations and research. Said fee is non-refundable, but shall be credited against the brokerage fee.

    C. **Client's Obligation:** If the Client enters into any agreement to purchase, exchange, lease, trade, or option to buy

any real property during the term of this agreement or within 180 days from the termination of this agreement or any extensions thereof, on any property presented or submitted to the Client by the Broker or otherwise seen by the Client during either term hereof, the Client agrees to pay the Broker a fee based upon the amount which the Broker would have received under either Paragraph 4A.1 or 4A.2 hereinabove.

D. Failure to close: Should a seller fail to close with no fault on the part of the Client, fees payable pursuant to this agreement shall be waived. If Client is at fault, the full fee will be due and payable immediately from the Client.

5. **OTHER POTENTIAL BUYERS:** Client understands that the Broker may represent other potential buyer/Clients who may be interested in purchasing similar properties. It is understood that the Broker will not disclose to either party the terms and conditions of the other's offer.

6. **DUAL AGENCY:** Broker acknowledges that the Broker represents and will act as agent for the Client in any transaction relating to this agreement. If the Client, however, becomes interested in any property that is listed with the Broker, the Client understands that the Broker has an existing agency relationship with the Seller and, as such, the Broker will serve as a limited consensual dual agent for both parties. Both parties will be asked to sign a "Limited Consensual Dual Agency Agreement" for each case in which this occurs.

The Client acknowledges that this disclosed dual agency is limiting by nature and can create conflicts of interest. The Client hereby waives any claims now or hereafter arising from such conflicts of interest or breach of fiduciary duty.

The Client understands and agrees that the Broker will represent both parties in this limited capacity. The Broker will disclose to both parties all facts and information required by law. Otherwise, the Broker will attempt to be impartial to both Seller and Buyer.

The Client understands and agrees that the Broker will not serve as either the Buyer's or Seller's sole and exclusive agent in the transaction and will assume the role of a limited dual agent.

The Broker will not disclose to the Buyer that the Seller might accept a price other than the listed price unless the Seller instructs otherwise, nor will the Broker disclose to the Seller that the Buyer might pay other than the offering price unless the Buyer instructs otherwise.

The Broker will not disclose to the Buyer that the Seller might accept any terms other than those stated in the listing agreement unless the Seller instructs otherwise, nor will the Broker disclose to the Seller that the Buyer might accept less favorable terms than indicated in the initial offer unless the Buyer instructs otherwise.

The Broker will not disclose to either Buyer or Seller any information communicated by either party that might place that party at a disadvantage, except that both parties acknowledge that the Broker is required by law to disclose any latent structural defect or any other defect known to the Broker. Latent structural defects and other defects do not refer to trivial or insignificant defects but refer to those defects that would be a significant factor to a reasonable and prudent person in making a decision to purchase.

7. **BUYER'S ACKNOWLEDGMENT STATEMENT:** Client acknowledges that Broker will provide the Client a copy of the Buyer's Acknowledgement Statement and Client agrees to execute the Buyer's Acknowledgement Statement at the time any offer is made on any property.

8. **REFERRAL FEES:** Client warrants that no referral fees will be claimed from Broker by any third party, such as a provider of relocation services, an affinity group, another licensed broker or salesperson or any other person or party. In the event Client deems it necessary at a later date to request a referral fee from Broker payable to a third party, Client agrees to pay Broker an additional fee in an amount equal to the total cost of the referral fee.

9. **LEGAL FEES:** In case of litigation concerning this agreement, the parties agree that costs and reasonable attorney fees shall be awarded to the prevailing party.

10. **WOOD INFESTATION.** Buyers acknowledge that the Wood Infestation Report, provided by an authorized termite company, is usually a visual inspection of accessible areas only and usually does not guarantee that inaccessible areas are free from active termites or damage caused by active or previous termites or other wood destroying organisms.

11. **SURVEY.** Buyers acknowledge that any representations, either verbal or written, concerning lot size, location of property lines, encroachments or easements, are not warranted to be accurate by the Sellers or the Sellers' Agent. LAH recommends that the Buyers acquire a current survey from a registered Alabama land surveyor, regardless of whether or not the survey is required by the Buyers' lender.

12. **SQUARE FOOTAGE.** Buyers acknowledge that any representations, either verbal or written, concerning the square footage of the property are estimates only and may have been taken from unreliable sources, such as tax records. The Buyers are responsible for determining square footage should that be important to your decision to purchase the property.

13. **SEWER/SEPTIC SYSTEM.** Almost all waste disposal systems in this marketplace are either sewer or septic tanks. You need to determine which system is present on the property. If on sewer, you should determine that the property is connected and that all impact and connection fees have been paid. If on septic tank, you should determine if it is operational, that it should be inspected, and acknowledge that it requires periodic cleaning.

14. **VARMINT INFESTATION.** Buyers acknowledge that homes sometimes have been invaded by varmints (rodents, reptiles, animals, and insects) and that their presence and/or residue could be a deterrent to purchasing. If this is a problem for you, you should consider strongly an inspection by a pest control expert.

15. **STIGMATIZED PROPERTY.** Buyers acknowledge that certain properties may be "stigmatized," that is, impacted by certain events which occurred on the property and had no effect on the actual construction materials of the home but may have some psychological impact on the property. Some examples are murder, suicide, and ghosts. If these issues are important to your decision to purchase, then the burden of discovery falls upon you, the Buyer. Alabama Law does not require the Sellers or the Seller's Agent to disclose such stigmas.

16. **HAZARD INSURANCE.** The homeowner's insurance industry is relying more than ever on the CLUE (Comprehensive Loss Underwriting Exchange) report, which is a database history of claims made on many properties. If the subject property has had numerous claims against its hazard insurance carriers, the insurance rates may be higher, or the property may not be insurable at all. It is important for you, the Buyers, to anticipate this potential problem, gather as much information as possible, and protect yourselves in the sales contract.

17. **TAXES.** The irregularities of tax reporting may cause some problems for you, the Buyers. Even though the tax collector (tax amount collected last year) and the tax assessor (tax amount due next year) can give you amounts at that point in time, those numbers may change up until the tax year deadline of October 1. Therefore the taxes as disclosed by the Sellers and the Sellers' Agent and reported by the taxing authority may be different than anticipated. It is important for you, the Buyers, to be prepared to verify the property taxes up to closing.

18. **OTHER OFFERS.** Buyers acknowledge that the Sellers may receive and consider offers other than the Buyers' offer during the time that you are considering your offer or counter-offer. Buyers also understand that those other offers may be generated by your own Sales Associate and other agents of LAH. Buyers finally acknowledge that the Sellers may withdraw any counter-offer at any time prior to delivery of your written acceptance and notification of acceptance by you and your Sales Associate to the Sellers or the Sellers' Agent and to accept any offer of the Sellers' choice.

19. **EARNEST MONEY.** Buyers acknowledge that Alabama law requires the real estate broker holding your earnest money check to deposit your check immediately when your offer becomes a completed contract, unless there is a clause in the contract that states otherwise.

BUYER _____Karl Doe_____ 2/25/09
                                    Date

BUYER _____ _____
                                    Date

SALES ASSOCIATE _Kate Causey Price_ 2/25/09
                                    Date

1/26/2007